TERRIE ANN C. JOHNSON v. ROBIN LANE JOHNSON

No. 8311DC339

(Filed 20 March 1984)

1. **Husband and Wife § 10— separation agreement—finding that entered into voluntarily and without duress, coercion or fear—supported by evidence**

    The evidence supported the trial court's finding that plaintiff entered into and executed a separation agreement freely, willingly, voluntarily, and without being under any duress, coercion or fear where the evidence tended to show that plaintiff met her husband in the parking lot of his attorney and advised him she was not going to sign the agreement; her husband advised her of the embarrassment which would come her way if the suit were litigated; such purported threats or duress were not new to the wife in that several threats had been made before this date and plaintiff was not afraid or intimidated thereby; the parties discussed further the cost of baby-sitting expenses, and husband agreed to pay beyond his present obligations; the two parties went into the reception room of the husband's attorney and waited some 30 minutes for a notary so that the instrument could be executed; the wife had every opportunity to discuss any duress or coercion with her friend, the notary; the parties are equally educated; and the wife was aware of the value of the house and lot at the time she signed the papers.

2. **Attorneys at Law § 5— misconduct of attorney—insufficiency of evidence**

    In an action challenging the validity of a separation agreement, plaintiff failed to show misconduct on the part of defendant's attorney where defendant's attorney did not participate in the negotiations between plaintiff and defendant, and where, even though he had been told by plaintiff's attorney that he had advised plaintiff not to sign the agreement, defendant's attorney did not speak to either party during the 30 minutes that the parties waited for defendant's attorney's notary to witness the signing of the agreement, and where defendant's attorney's conversation with the wife after the signing was reassuring and innocuous.

3. **Rules of Civil Procedure § 52; Trial § 58.1 — ability of trial judge to request attorney to draft proposed judgment**

In an action in which plaintiff sought to declare a separation agreement invalid, the trial judge properly directed the attorney for the defendant to prepare proposed findings and conclusions and draft the judgment, and adopted the judgment as his own when tendered and signed. G.S. 1A-1, Rule 52 does not require the manual drafting of the judgment or oral dictation thereof by the trial judge.

APPEAL by plaintiff from *Lyon, Judge.* Judgment entered 25 October 1982 in District Court, JOHNSTON County. Heard in the Court of Appeals 16 February 1984.

The parties to this lawsuit are husband and wife and have one child born 13 December 1979. On 30 December 1981 the parties separated and have lived separate and apart since that time. On 27 January 1982 plaintiff wife filed suit against defendant husband seeking *inter alia* custody of the child and support therefor, title to one motor vehicle, equitable distribution of the property, and attorney fees. Defendant was served on the same day.

During the week preceding the filing of the lawsuit, defendant had instructed his attorney to prepare a deed of separation which included a property settlement. Under the terms of the proposed agreement, custody of the child was to be held jointly in each party. Medical expenses for the child were to be divided. The plaintiff waived alimony and support. The husband agreed to pay the wife $1,000.00 for her interest in the personal property and $1,500.00 for her interest in the real estate. The plaintiff retained one of the automobiles and would pay the balance due on her automobile. The savings account became the property of the husband.

On 28 January 1982 plaintiff and defendant met at the office of defendant's attorney, Yates Dobson, where they examined the deed of separation. Plaintiff obtained a copy of the proposed agreement and took it to her attorney, Stephen Woodard, who advised her not to sign the document in its present form. Mr. Woodard made suggested changes in the margin of the document and called Mr. Dobson to advise him of the changes.

Thereafter, plaintiff returned to her automobile where she met her husband. She advised her husband that she would not sign the agreement. He said to her, "That's fine; I will take you to

court and I will get my baby. I am going to strow your name all over Johnston County and take your son from you. . . . I will tell about the abortion, and I am going to tell about all the men you have run off with. . . ." Thereafter, the wife told her husband she would sign the separation agreement, and the two parties returned to the office of defendant's attorney.

The notary was out at the time, and the parties waited for her approximately thirty minutes. The notary had taught the plaintiff in the sixth grade and the two of them were friends, being on a first name basis. Upon the notary's return, the defendant advised her that his wife was ready to sign. Defendant paid his wife $2,500.00, and she paid defendant $150.00 which she had borrowed. After the parties signed the agreement, defendant's attorney came out of his office and said to plaintiff: "Terrie, this is no big deal. You and Robin can work [it] out if you want the baby on some weekend or if you want him on holidays. . . . I feel you can sit down and work it out." Defendant's attorney prepared a receipt for $2,500.00 which plaintiff signed.

The following day plaintiff took a dismissal in the then existing lawsuit. Some four months later she brings this action seeking custody of the child, and to set aside the deed of separation signed on 28 January 1982. The defendant pleaded as a defense abandonment by plaintiff, adultery, excessive alcoholism, and the voluntary execution of the deed of separation and ratification thereof. He also sought custody of the child. At trial the parties announced that the child custody portion of the lawsuit had been settled, leaving only the question of the validity of the deed of separation concerning the real property.

The case was tried without a jury. The trial judge made the following pertinent findings of fact:

16. That during said conversation the parties to said Separation Agreement agreed that the Defendant would pay the costs for all babysitting or baby care services to the Plaintiff; that thereafter the Plaintiff decided to enter into and execute the Separation Agreement in question.

17. That subsequently to the conversation between the Plaintiff and the Defendant, both the Plaintiff and the Defendant returned to the offices of the said T. Yates Dobson,

Jr., and there waited for a period of time for a Notary Public before whom to sign and execute the said Separation Agreement.

18. That prior to the Plaintiff and the Defendant returning to the offices of T. Yates Dobson, Jr., Plaintiff's attorney made a telephone call to the law offices of T. Yates Dobson, Jr., and informed the party to whom they spoke that the Plaintiff did not wish to sign the Agreement; that upon leaving the office of her counsel, and upon discussing with the Defendant his agreement to pay to her all the costs of baby care services and babysitting services, along with the sum of $1,500 for her interests in the property previously owned by the parties, together with $1,000 in cash for furniture, the Plaintiff thereafter decided, freely, willingly, and voluntarily, to enter into the Separation Agreement which she had read in the offices of T. Yates Dobson, Jr.

19. That approximately 10 minutes after 6 p.m. on the day of January 28, 1982, the Plaintiff, and the Defendant, in the presence of Pansy E. Dobson, A Notary Public for said County and State, executed by signing and affixing their personal signatures thereto the Separation Agreement between said parties; that at the time the said Plaintiff affixed her signature to said Separation Agreement the Plaintiff was not under duress, threat, or fear of the Defendant, that the said Pansy E. Dobson taught the Plaintiff in the sixth grade; that they are friends and on a first name basis with the other; that if the Plaintiff had been under any fear or duress certainly she would have revealed such to her friend, and certainly Pansy E. Dobson would have recognized such fear and duress being practiced on Plaintiff if in fact such did exist.

20. That any alleged statements made by the Defendant to the Plaintiff that he intended to contest and to litigate in the Courts the question of the custody of the minor child of said parties, together with his alleged statements that he would seek full custody, did not constitute any threat to the Plaintiff; that such statements had been allegedly made to the Plaintiff on several occasions prior to the 28th day of January, 1982; that if such threats had in truth been made the Plaintiff was not afraid and was not intimidated by and

was not therefore or thereby placed under duress or fear at or before the time of the signing of the Separation Agreement which the Plaintiff entered into with this Defendant on the 28th day of January, 1982.

21. That at the time the Plaintiff executed said Separation Agreement, the Defendant paid to the Plaintiff the sum of $2,500 in cash; that in addition thereto, immediately prior to the signing of said Agreement by the Plaintiff, Defendant and Plaintiff agreed each with the other that the Defendant would pay the costs for baby care and babysitting services on behalf of himself and the Plaintiff; that the agreement by the Defendant to pay these additional costs, in addition to the sums of cash paid to the Plaintiff, constituted additional consideration for the entry into and the free and voluntary signing of said Separation Agreement.

22. That the Plaintiff, at the time of the execution of said Separation Agreement, was a person of intellect, having a high school education, and that her background, both socially and educationally, was equal or equivalent to that of the Defendant; that at said time the Plaintiff was capable of and did understand and know the consequences of entering into said Separation Agreement; that the said Plaintiff did in fact enter into and execute and sign the Separation Agreement, together with a Deed conveying her interest in the property formerly owned by the parties to the Defendant, freely, willingly and voluntarily, and without being under any duress, coercion, fear, or threat of the defendant.

Based upon these findings of fact the trial judge concluded that plaintiff freely and willingly entered into the separation agreement, and adjudged the separation agreement valid. Plaintiff appealed.

*Daughtry, Hinton, Woodard & Lawrence, P.A., by Stephen C. Woodard, Jr., for plaintiff appellant.*

*T. Yates Dobson, Jr., and Narron, O'Hale, Whittington and Woodruff, P.A., by James W. Narron for defendant appellee.*

HILL, Judge.

I

Plaintiff contends the trial judge erred by his refusal to set aside the deed of separation because of attorney misconduct, breach of fiduciary relationship, undue influence, duress, coercion, or denial of counsel to plaintiff. By her assignment of error we must divide the issue into two parts: (1) the alleged overreaching of the defendant, and (2) the alleged misconduct of defendant's attorney. We find no error in the trial judge's resolution of these two issues.

[1] (1) *The alleged overreaching of defendant.* North Carolina Courts have scrutinized separation agreements with utmost concern. In the case of *Eubanks v. Eubanks*, 273 N.C. 189, 195-96, 159 S.E. 2d 562, 567 (1968), Justice (later Chief Justice) Sharp stated: "The relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid, must be fair and reasonable. . . . To be valid, 'a separation agreement must be untainted by fraud, must be in all respects fair, reasonable and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties.' "

Courts have thrown a cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably. To warrant equity's intervention, no actual fraud need be shown, for relief will be granted if the settlement is manifestly unfair to a spouse because of the other's overreaching. *See Christian v. Christian,* 42 N.Y. 2d 63, 72, 365 N.E. 2d 849, 856, 396 N.Y.S. 2d 817, 824 (1977). With these principles in mind, we examine the facts of the case under review.

Evidence supporting the factual findings of the trial judge indicates that plaintiff met her husband in the parking lot of his attorney and advised him she was not going to sign the agreement. Husband advised her of the embarrassment which would come her way if the suit were litigated. Such purported threats or duress were not new to the wife. The record reveals that such accusations directed toward her had been made on several occasions

Johnson v. Johnson

prior to 28 January 1982, and plaintiff was not afraid or intimidated thereby, nor was she placed under duress at or prior to the time of signing the separation agreement. In fact, the parties discussed further the cost of baby-sitting expenses, and husband agreed to pay beyond his present obligations to his wife the cost of child care and baby-sitting. The offer of sharing the baby-sitting expenses by the husband was an added consideration for plaintiff to execute the instrument. The evidence further shows that the two parties went into the reception room of the husband's attorney and waited some thirty minutes for a notary so that the instrument could be executed. The wife had every opportunity to discuss any duress or coercion with her friend, the notary. Also, the wife was aware of the value of the house and lot at the time she signed the papers. She knew the lot was given to her and her husband by his parents, and the cost of the dwelling was covered by a loan. She received $1,500.00 consideration for her interest in the house. Plaintiff and defendant are equally educated.

We conclude that the evidence supports the trial court's finding that plaintiff entered into and executed the separation agreement freely, willingly, voluntarily, and without being under any duress, coercion, or fear. The findings of fact support the conclusion of law that the separation agreement executed and signed by plaintiff is valid and of full force and effect.

[2]   (2) *The alleged misconduct of defendant's attorney.* Defendant's attorney did not participate in the negotiations between plaintiff and defendant. Even though he had been told by plaintiff's attorney that he had advised her not to sign the agreement, we conclude he did all that was required thereafter. He stayed in his private office while the parties sat in the reception room. He did not speak to either party until after the agreement was signed. His conversation with the wife was reassuring and innocuous after the signing. The receipt which he drew after execution was not challenged. We find nothing improper in the action by defendant's attorney.

II

[3]   Finally, plaintiff argues the court erred in refusing to personally make findings of fact, state separately his conclusions of law and direct the entry of appropriate judgment as required by

G.S. 1A-1, Rule 52 of the North Carolina Rules of Civil Procedure. We do not interpret this rule as requiring the manual drafting of such judgment or oral dictation thereof. The trial judge properly directed the attorney for the defendant to prepare proposed findings and conclusions and draft the judgment, and adopted the judgment as his own when tendered and signed. The entire judgment was not made until all of this was accomplished. See *Bank v. Easton,* 12 N.C. App. 153, 182 S.E. 2d 645, *cert. denied,* 279 N.C. 393, 183 S.E. 2d 245 (1971). We conclude the judgment was proper. Evidence presented at trial was sufficient to support the findings of fact, conclusions of law, and the judgment.

Affirmed.

Judges HEDRICK and EAGLES concur.