These petitions, all seeking extraordinary review of preliminary matters in a class action, are due to be denied. The action seeks damages based on alleged defects in exterior siding manufactured by the Masonite Corporation. Masonite's[1] petitions for the writ of mandamus and for permission to appeal seek to have the class certification set aside, the circuit judge recused, and the plaintiffs' attorneys disqualified, all on the basis of contacts between the circuit judge and the plaintiffs' attorneys that Masonite asserts were improper.
The allegations of improper ex parte contacts are not substantiated by the materials before us. At the hearing on class certification, the circuit judge, Judge Robert G. Kendall, told the parties that, when he decided whether to grant class certification, he would notify the prevailing party and ask that party to draft a proposed order. Masonite did not object to this proposed procedure. After the judge decided to certify the class, the communications between the judge or his staff and the attorneys or their employees were the barest minimum necessary to notify the plaintiffs that the court had decided to certify the class and to effectuate the drafting of the certification order.[2]
The plaintiffs filed their complaint in December 1994 and amended it in January 1995. Discovery and briefing on whether to certify a class proceeded from March through October 1995. A full hearing was held on class certification on October 16, 1995, at which Masonite presented expert *Page 1070 
testimony and the attorneys for both sides argued at length for and against certification of a nationwide plaintiff class of owners of residences with Masonite siding. At the conclusion of the hearing, Judge Kendall stated:
 "I have a considerable amount — additional amount of thinking to do. What I think now I propose to do is to when I reach a conclusion ask one side or the other to prepare an order for me, and I will do that without bothering the nonprevailing side, and put that in whatever form I like, and then circulate it to both sides."
On November 6, Judge Kendall notified Richard T. Dorman, one of the plaintiffs' attorneys, that he had decided in favor of class certification. One or two days later, Mr. Dorman had his secretary call the judge's office to ask whether to certify subclasses, and the answer came back, "No." A draft of the order was sent with a short cover letter, and the judge made changes and sent the order back. Someone in Mr. Dorman's office telephoned the judge's office and asked whether to send a copy of the order to the defendants and was told not to. The finished order was then delivered to Judge Kendall. Out of these events, Masonite counts 11 "ex parte" communications.
On November 15, 1995, Judge Kendall signed the order certifying the class. Later that day, and apparently without notice or knowledge that Judge Kendall had certified the class, Masonite filed a petition for removal to a federal court. On the plaintiffs' motion, the federal court remanded the cause in late January or early February 1996. On February 7, Masonite filed a motion to vacate the certification of the plaintiff class, asserting that the communications between the judge and Mr. Dorman to facilitate the drafting of the order had constituted ex parte communications, which are prohibited by Rule 3.5(b) of the Alabama Rules of Professional Conduct and Canon 3(A)(4) of the Alabama Canons of Judicial Ethics.
We note that footnote 2 of Masonite's February 7 motion to vacate states:
 "The Alabama Canons of Judicial Ethics and the ABA Code of Judicial Conduct also condemn ex parte
communications and require that courts not consider or permit ex parte communications. These provisions specifically apply to requests for and submissions of proposed findings or orders and require that the party contacted to submit same notify the other parties so they are given the opportunity to respond to the proposed order. (Alabama Canons of Judicial Ethics, Canon 3(A)(4).) (ABA Model Code of Judicial Conduct, Canon 3(B)(7) and Commentary.)"
(Emphasis added.) Canon 3(A)(4) of the Alabama Canons does not "specifically" apply to such proposed findings or orders. The American Bar Association adopted a new Model Code in 1990. Canon 3(A)(4) of Alabama's Canons of Judicial Ethics is substantially the same as Canon 3(A)(4) of the 1972 ABA Code of Judicial Conduct. In both our Canons and the ABA's 1972 Code, Canon 3(A)(4) and its commentary are silent as to requests for, or submissions of, proposed findings or orders.
The 1990 version of the ABA's model canon on ex parte
communications is Canon 3(B)(7). The commentary to that rule includes this statement: "A judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions."
As we view these petitions, Masonite's challenge to the certification order reduces to a complaint that it was not given a copy of the order before Judge Kendall signed it. This oversight was redressed by the fact that, in response to Masonite's motion to vacate, Judge Kendall scheduled a hearing on the matter, which was held on February 14. The hearing opened with these remarks:
 "Mr. Lightfoot: Your Honor, I'm Warren Lightfoot from Birmingham. We say that the Court's order on class certification is due to be vacated, number one, because the procedures that Your Honor outlined at the close of the hearing on October 16 were not followed. Specifically Your Honor said that you would call on one side or the other to prepare an order and that that order would be circulated to both sides before any entry of an order. *Page 1071 
 "The Court: All right. What happened there was . . . I simply forgot that I had said that I would do the second stage of that, which was circulate the order after the Court had approved it and I apologize for that. How is your client aggrieved in that regard?
 "Mr. Lightfoot: Well, I was going to tell you other reasons why it should be vacated.
 "The Court: All right. Well, are you going to answer that question first?
 "Mr. Lightfoot: Yes, sir, I do. Under the cases cited by counsel for the plaintiff, [In re] Colony Square [Co., 819 F.2d 272 (11th Cir. 1987)] in particular, that's an 11th Circuit case. . . . That case says that orders drafted solely by one side without being seen by the other side are inherently defective. That they are inappropriate, that there is overwhelming opportunity for overreaching and exaggeration and that they don't necessarily reflect the opinions of the Court, that they may reflect the opinions of counsel, and that that procedure is condemned and they go on to say how it's to be rectified. The case law says that. We are prejudiced by having counsel for the plaintiff submit its words to the Court."
Mr. Lightfoot continued in the same vein, arguing generally and in the abstract that the practice of allowing prevailing counsel to draft proposed opinions and orders raises an appearance of impropriety. He never described any portion of the order that Masonite would have objected to if it had been given a copy of the order before Judge Kendall signed it. Mr. Dorman then took the stand and described the process by which the order was drafted; one of his partners then gave further testimony. At the conclusion of this testimony, Mr. Lightfoot said he would like a week to consider whether to file a motion asking Judge Kendall to recuse and to disqualify the plaintiffs' lawyers. The attorneys then argued further issues not here pertinent.
On February 23, Masonite filed a motion asking Judge Kendall to recuse and a motion to disqualify the plaintiffs' counsel, supported, among other things, by affidavits from Prof. Steven Lubet of Northwestern University School of Law and Prof. William G. Ross of Cumberland School of Law. Masonite later filed an affidavit of Prof. Geoffrey C. Hazard, Jr., of the University of Pennsylvania and Yale University, and other materials in support of its motion.
In response, the plaintiffs submitted, among other things, the affidavits of two respected members of the Bar of this state, former Chief Justice C.C. Torbert and the late Circuit Judge Joseph Phelps, and the declaration of another respected Bar member, former Circuit Judge Joseph A. Colquitt. They expressed unequivocal opinions that the drafting of the order certifying this action as a class action complied with the Canons of Judicial Ethics, the Rules of Professional Conduct, and the usual and customary practice in this state. Chief Justice Torbert's affidavit includes the following:
 "I, like many lawyers and commentators, am concerned about the current willingness of some parties to litigation to wrongfully attack conscientious, ethical and well-qualified judges in [an] attempt to gain advantage for themselves. I have known Judge Robert Kendall for many years and know him to be a judge of intelligence and integrity. Based upon the evidence I have seen, he is now the victim of an unjustified attack. Based upon my review of the record in this case, I have seen no evidence that Judge Kendall is biased or prejudiced in favor of or against either party in this matter. Indeed, it appears that Judge Kendall has gone to great lengths to allow both parties to present their positions in full and to rule fairly and objectively. Whether or not I would agree with all of Judge Kendall's rulings is irrelevant. In my opinion there is no basis for the recusal or disqualification of Judge Kendall or the disqualification of the lawyers for the plaintiffs.
". . . .
 "As Chief Justice of the Alabama Supreme Court and head of the Administrative Office of Courts, I became keenly aware of the pressures faced by trial judges — such as Judge Kendall — in Alabama. It is likely that all of them would *Page 1072 
prefer to have caseloads and staff that would allow them to prepare, type and finalize all orders that they enter. As a practical matter, that is not feasible. Consequently, as every practicing lawyer in Alabama knows, many trial judges frequently ask the lawyers for the prevailing side on an issue to 'prepare an order' consistent with the views taken by the judge after hearing the facts and the evidence. The appellate courts of this state have expressly found that delegating the preparation of an order as was done in this case is not inappropriate and has been common practice in the state for many judges. See, e.g., Stollenwerck v. Talladega County Board of Education, 420 So.2d 21, 23-24 (Ala. 1982).
 "In this case, when Judge Kendall announced on the record and in open court his intention to have the prevailing party prepare an order there were no objections — probably because the parties realized there was nothing per se wrong with such a procedure. It was only after finding out that the Court had ruled in favor of class certification that objections were raised and ethical violations charges made."
Judge Phelps stated in his affidavit, in support of his "strong opinion that there was no ethical breach by the lawyers or Judge Kendall in this case [and that] [c]ertainly, there is no basis for recusal or disqualification of Judge Kendall or the lawyers":
 "Ideally, trial judges would have the resources and time to prepare their own orders based upon the evidence and the law presented to them. However, based upon my education and experience, I can state that the practicalities of expeditiously processing the volume of cases presented to judges do not allow those judges to always do their own clerical work in producing the orders they have decided should be entered. It is common practice in many circuit courts in Alabama for the judge to read the briefs, listen to the evidence, hear oral argument, and then ask the prevailing party to prepare an order which conforms with the decision the judge has made. In this case, Judge Kendall made clear to all parties at the October 16, 1995, hearing that he intended to utilize that procedure. No objection to the procedure [was] voiced by either side. The fact that there was no objection probably evidences that all the lawyers were aware that this was common practice and simply not objectionable. I believe that the procedure followed by Judge Kendall is an acceptable alternative to the common practice of having both sides present proposed orders to the court."
Judge Colquitt's declaration includes the following specific points that refute Masonite's arguments for setting aside the class certification because of the alleged ex parte
communications:
 "The real issue to be decided is whether those communications as they occurred justify or require that the class-certification order be vacated, the Judge recuse himself, and Plaintiffs' counsel be disqualified from representing the Plaintiffs. The plain answer is no, the Defendants have failed to establish by the evidence that Judge Kendall is biased or prejudiced against the Defendants, and his conduct in this case would not lead a reasonable person to so conclude. This conclusion is supported by the following facts:
 "a. Judge Kendall announced at the end of the hearing on October 16, 1995, that after he decided whether to certify a class, he would
 " 'ask one side or the other to prepare an order for me, and I will do that without bothering the nonprevailing side, and put that in whatever form I like, and then circulate it to both sides.'
 "Defendants' counsel thus had notice of what was to occur. They voiced no objection to the proposed procedure, and for [all that] appears would have been willing to entertain a request from the Court that they 'prepare an order' denying the Plaintiffs' request for class certification. The 'pattern of communication' and 'exclusion' of the opposing side from the drafting process objected to by Defendants' witnesses would have occurred whichever side the Judge called if the Judge followed his plan. The Judge's decision to exclude the *Page 1073 
nonprevailing party was announced by the Judge at the hearing and was known to both sides. The Defendants should not be permitted to stand by and await the outcome of the Judge's deliberations before deciding whether to object to the announced procedure.
 "b. Before calling Mr. Dorman, according to the evidence in this case Judge Kendall had reached a decision on the class certification issue. As Mr. Dorman sought clarification on the issue of subclasses, Judge Kendall ruled against Mr. Dorman on subclasses. This fact hardly suggests bias, prejudice and partiality on the part of the Judge.
 "c. Courts, particularly state courts, are faced with growing caseloads of increasing complexity. Frequently they face time standards, limited budgets, inadequate staffs and insufficient supplies. In Alabama, judges are to reduce delay and dispose of pending litigation. Yet the typical judge moves from one hearing to the next often without a recess. Complex orders in complicated cases frequently are drafted by attorneys, many times at the request of the judge after the judge has heard both sides and decided the issue to be made the subject of the order.
 "d. Although a 'better' procedure might have been followed, the facts of this case do not justify virtually the most drastic remedies available, namely recusal of the Judge and disqualification of Plaintiffs' chosen counsel. The communications in this case are not substantial. The evidence fails to show a hidden collusion or conspiracy. The Judge did what he announced that he would do — with one exception: After putting the proposed order in the form he wanted, he did not circulate a copy of the proposed order before he signed it. This failure to circulate the order does not create a clear appearance of impropriety or bias. In fact, Professor Lubet, Defendants' witness, notes that 'I do not mean, of course, that Judge Kendall has been or will be intentionally biased, or that his rulings have been other than in good faith.' Similarly, Defendants' witness Professor Ross noted that '[n]othing in this affidavit should be construed to impugn Judge Kendall's integrity or his good faith in this case.' "
Except in one respect, Judge Kendall followed the procedure he announced at the conclusion of the hearing on class certification. That one deviation from the announced procedure was the judge's failure to give the defendants' attorneys a copy of the order before he signed it.[3] When the judge was reminded that he had said he would give both sides a copy of the order before signing it, he called a further hearing and invited the parties to object to any provisions of the order. The defendants objected to the certification of the class, but did not suggest any revision to the order. Any harm that may have occurred from the judge's failing to follow the earlier-announced plan of allowing review of a proposed order after it had been drafted by the prevailing party was cured by the hearing at which the defendants were given the opportunity to object to any portions of the order they deemed to be incorrect or inappropriate.
The affidavits by Chief Justice Torbert and Judge Phelps and the declaration by Judge Colquitt show that these respected members of our Bar reviewed the pertinent materials and concluded that nothing improper occurred. We agree with these former circuit judges and this former Chief Justice of this Court that the circuit judge and the plaintiffs' attorneys have engaged in no unethical conduct and no conduct creating an appearance of impropriety.
This conclusion is supported by the reported appellate cases. In Stollenwerck v. Talladega County Board of Education,420 So.2d 21 (Ala. 1982), this Court held that the circuit court's adoption of an order containing what the appellant called "extensive findings of fact," prepared by the defendant's attorney, did not violate Rule 52(a), Ala. R. Civ. P., which pertains to findings of fact by the trial court: *Page 1074 
 "We find no prohibition in [Rule 52(a)] which would forbid the delegation by a trial court to the prevailing attorney of the task of preparing a proposed order which includes findings of fact based upon the evidence in the case. Although this Court has never ruled on the propriety of the practice of trial judges' allowing or requesting counsel for the prevailing party to prepare findings, the basic view by many jurisdictions which have considered the matter is that such practice is not improper. 54 A.L.R.3d 868 (1974). In fact, no reported case has been found in which the objection has met with actual success at the appellate level. Id., at 870. The practice of having the prevailing attorney draw up an order is not uncommon in federal courts. See, e.g., Miller v. Tilley, 178 F.2d 526 (8th Cir. 1949). Therefore, the decree prepared by the attorney, but adopted by the trial judge as the court's decree, is due to be affirmed."
420 So.2d at 23-24 (emphasis original; footnote omitted). InMedical Arts Clinic, P.C. v. Henry, 484 So.2d 385 (Ala. 1986), this Court, while disapproving of an ex parte communication, held that it did not constitute reversible error.
More recently, the Court of Civil Appeals has found no error in a "trial court's request for the parties to 'draft an appropriate decree' ":
 "It has been a long-standing practice in this state and elsewhere for trial judges to delegate the manual preparation of judgments to others. Frequently, as in this case, one or more parties draft a proposed judgment, which the trial court may accept or reject, in part, or in its entirety. So common is this practice that legal research books used in the practice of law frequently provide forms suggesting proposed orders.
 "In the case sub judice, soon after the trial court's request to both parties to prepare a draft of an appropriate order, the employer provided the employee with a proposed judgment and sought suggestions. Apparently, the employee chose not to respond to the trial court's request, not to respond to the employer's request for suggestions regarding the proposed order, and not to object to the employer's proposed order. . . . Other jurisdictions have considered this practice acceptable on the basis that the proposed or draft judgment presented by an attorney has no legal effect until signed by the trial court. See, for example, Johnson v. Johnson, 67 N.C. App. 250, 313 S.E.2d 162 (1984), and In re Crane's Estate, 343 Ill. App.? 327, 99 N.E.2d 204 (1951). In many cases, the preparation of a proposed judgment is customarily delegated to the winning attorney. See Johnson, supra. Thus, there was simply no error in the trial court's delegation of the task of preparing a draft judgment in accordance with its findings."
Boothe v. Jim Walter Resources, Inc., 660 So.2d 604, 607
(Ala.Civ.App. 1995) (emphasis original).
The Supreme Court of the United States has disapproved "the Fourth Circuit's suggestion that 'close scrutiny of the record in this case [was] justified by the manner in which the opinion was prepared,' . . . that is, by the District Court's adoption of petitioner's proposed findings of fact and conclusions of law. . . . [O]ur previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. City ofBessemer City, N.C., 470 U.S. 564, 571-72, 105 S.Ct. 1504,1510-11, 84 L.Ed.2d 518 (1985) (citation omitted).
In two recent cases, the United States Court of Appeals for the Eleventh Circuit has found no reversible error where proposed orders were drafted by attorneys in whose favor the judges had ruled. In re Colony Square Co., 819 F.2d 272 (11th Cir. 1987), cert. denied, 485 U.S. 977, 108 S.Ct. 1271,99 L.Ed.2d 482 (1988); In re Dixie Broadcasting, Inc.,871 F.2d 1023 (11th Cir.), cert. denied, 493 U.S. 853, 110 S.Ct. 154,107 L.Ed.2d 112 (1989). See also Keystone Plastics, Inc. v. C P Plastics, Inc., 506 F.2d 960 (5th Cir. 1975). In ColonySquare, the bankruptcy judge had communicated with the creditor's attorney on several occasions requesting orders, without the debtor's knowledge. The Court of Appeals found no error, *Page 1075 
based principally on two facts: the judge had "already reached a firm decision before asking Alston Bird to draft the proposed orders," 819 F.2d at 276, and "[s]econd, Colony has had ample opportunity to present its arguments," 819 F.2d at 277. Both of these facts are present here — Judge Kendall had reached a firm decision before telephoning Mr. Dorman (indeed, he ruled against the plaintiffs on their requests for certification of a non-opt-out Rule 23(b)(1) or (b)(2) class and for certification of subclasses), and he gave Masonite a full opportunity to argue its assertion of prejudice when it called to his attention that he had forgotten to send it a copy of the order before entering it.
With all due respect to the law professors who have executed affidavits in support of Masonite's motions, we observe that they have not taken into account several aspects of the case. First and foremost, they fail to consider the fact that Judge Kendall had held an extensive class certification hearing and had received briefs from both sides before he decided to certify the class. They also give too little weight to the February 14 hearing, held after Masonite had made its motion to vacate, at which Masonite was able to point to no provisions in the order that might have been overwritten, exaggerated, or otherwise distorted or that were erroneous by virtue of the drafting by the plaintiffs' attorneys without notice to the defendants. They also fail to take into account the fact that a certification order is inherently interlocutory, conditional, and subject to revision or complete decertification if, as the case develops, countervailing considerations arise. We see no sign that they have taken into account the rigorous schedule of a trial court's docket. Seven of the Justices of this Court are former circuit judges and are well aware of the necessity of assistance such as was provided by the attorneys in this case. Of the résumés of these three law professors, only Prof. Ross's shows any significant experience in the private practice of law.
Frankly, we find it somewhat unusual for officers of the court to seek recusal under these circumstances. When given the opportunity at the February 14 hearing to present their objections to the court's order, defense counsel did not suggest any revision of the order or cite any change they would have suggested if the order had been sent to them before it was executed, other than to change the result of certifying the class.
For the foregoing reasons, we hold that there is no basis for further review of the petitioner's allegations of improperex parte communications.
To the extent that these petitions challenge the notice procedure as not complying with Phillips Petroleum Co. v.Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the petitions do not show any clear error and do not present a question appropriate for review under Rule 5, Ala. R.App. P.Shutts and Rule 23(c)(2), Ala. R. Civ. P., require only "the best notice practicable under the circumstances." Notice by publication has been approved in national class actions where the identities of the class members cannot be ascertained. Inre Domestic Air Transportation Antitrust Litigation,141 F.R.D. 534, 548 (N.D. Ga. 1992); Jordan v. Global Natural Resources,Inc., 104 F.R.D. 447, 448 (S.D. Ohio 1984). The dissent addresses the question whether Shutts would be violated by an application of Alabama law to all of the plaintiffs' claims, but Judge Kendall has not even ruled on the choice of law question yet.
Similarly, there is no merit to the argument that Judge Kendall's order is due to be set aside on the basis that he has made a preliminary decision to hold an initial trial on the single issue of whether the siding is defective. Initial trials on a single issue, such as whether a particular product is defective, have been approved in complex product liability class actions. Jenkins v. Raymark Indus., Inc., 109 F.R.D. 269
(E.D. Tex. 1985), aff'd, 782 F.2d 468, reh'g denied, 785 F.2d 1034 (5th Cir. 1986); Central Wesleyan College v. W.R. Grace Co., 6 F.3d 177 (4th Cir. 1993); In re School AsbestosLitigation, 789 F.2d 996 (3d Cir. 1986), cert. denied sub nom.Celotex Corp. v. School Dist. of Lancaster, 479 U.S. 852,107 S.Ct. 182, 93 L.Ed.2d 117 (1986); Arthur Young Co. v.United States District Court, 549 F.2d 686 (9th Cir.), cert. denied,434 U.S. 829, *Page 1076 98 S.Ct. 109, 54 L.Ed.2d 88 (1977); In re Copley Pharmaceutical, Inc.,'Albuterol' Products Liability Litigation, 161 F.R.D. 456
(D.Wyo. 1995). Furthermore, Judge Kendafll's order is preliminary, and appellate courts do not review preliminary orders in class actions absent compelling reasons to do so.First Alabama Bank of Montgomery, N.A. v. Martin, 381 So.2d 32
(Ala. 1980), appeal after remand, 425 So.2d 415 (Ala. 1982),cert. denied, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313
(1983); Ex parte Central Bank of the South, 675 So.2d 403
(Ala. 1996).
For the foregoing reasons, the petition for permission to appeal is denied, and the petitions for the writ of mandamus are also denied.
1950962 — WRIT DENIED.
1950963 — PETITION FOR PERMISSION TO APPEAL DENIED.
1951093 — WRIT DENIED.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., concurs in part and dissents in part.
MADDOX and HOUSTON, JJ., concur in the result in part and dissent in part, with separate writings.
[1] International Paper Company is also a defendant and a petitioner by virtue of its having purchased the Masonite Corporation. We shall refer to the two petitioners collectively as "Masonite. "
[2] Despite Masonite's allegations of "numerous" ex parte contacts, the evidence was that the only time Judge Kendall actually spoke to the plaintiffs' attorney was when he first asked for the order to be drafted. According to the attorney, that conversation lasted about two minutes. The other communications either were relayed through staff or consisted of the delivery back and forth of the first and second draft of the order.
[3] The dissent erroneously states that Judge Kendall "also told the parties that he would hear arguments about this proposed order once it had been drafted and delivered." 681 So.2d at 1086. Judge Kendall simply said that he would "circulate it to both sides."